IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ALISHA BURTON** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO. _____ |
| | ) |
| **ADTRAN, INC.** | ) |
| | ) |
|     **Defendant.** | ) |

# COMPLAINT

COMES NOW Alisha Burton, Plaintiff in the above-styled action, files her Complaint against ADTRAN, Inc. and, in support thereof, states as follows:

### INTRODUCTION

Plaintiff Alisha Burton is an African-American female. She was a Senior Manager in the Human Resources Department at Defendant, ADTRAN, Inc. She was employed by Defendant for almost three (3) years. A hard-working and conscientious employee, Ms. Burton received consistently positive reviews during her tenure, and was never subject to any discipline. Ms. Burton's supervisor, Joia Thompson, consistently treated Ms. Burton differently than Caucasian employees, subjecting her to unreasonable work-related goals. Ms. Thompson ultimately terminated Ms. Burton's employment because Ms. Burton participated in the company's investigation of a former co-worker's EEOC Charge.

## PARTIES

1. Plaintiff Alisha Burton is above the age of nineteen (19) and is a resident of Jefferson County in the State of Alabama.

2. Defendant ADTRAN, Inc. ("ADTRAN") is a foreign corporation, doing business by registered agent in the State of Alabama, within the Northern District of Alabama.

## JURISDICTION AND VENUE

3. All of the events, transactions or occurrences which gave rise to Plaintiff's claims took place in this Judicial District. Therefore, venue is proper in this district and this division pursuant to 28 U.S.C. § 1391(b)(1).

4. Federal jurisdiction exists as this action arises under the AMERICANS WITH DISABILITIES ACT of 1990, 42 U.S.C. §§ 12101-12213, as amended ("ADA"), 28 U.S.C. § 1343(a)(4), and TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §§ 2000e - 2000e-17. This Court maintains subject matter jurisdiction under 28 U.S.C. § 1343(a)(4), 1337 and 29 U.S.C. §2611 *et seq*.

5. This Court maintains subject matter jurisdiction under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1343(a)(4).

## CONDITIONS PRECEDENT

6. Plaintiff has exhausted all administrative remedies, as mandated by 29 U.S.C. § 626(d)(1), with Plaintiff Alisha Burton filing a Charge of Discrimination

with the Equal Employment Opportunity Commission on December 03, 2020, alleging discrimination by Defendant, a copy of which is attached hereto as Exhibit A, and its terms incorporated by reference as if fully set out herein.

7. The Equal Employment Opportunity Commission issued Plaintiff Alisha Burton a "Right-to-Sue" Letter, dated June 4, 2021, a copy of which is attached hereto as Exhibit B, and its terms incorporated by reference as if fully set out herein.

8. Plaintiff has satisfied all conditions precedent to the filing of the instant Complaint.

## FACTS

9. Plaintiff Alisha Burton restates and realleges the allegations contained in paragraphs 1 through 8 as if fully set out herein.

10. Plaintiff Burton began her employment at Defendant ADTRAN on or around May 13, 2013.

11. She was initially hired as the Manager of Talent Management in the Human Resources Department.

12. Plaintiff Alisha Burton was a hard-working employee during her time at ADTRAN, receiving many positive reviews and accolades during her tenure.

13. In particular, she was commended for her management of the employees who reported to her.

14. Plaintiff was never disciplined for any reason while employed by Defendant ADTRAN.

15. Joia Thompson was Ms. Burton's immediate supervisor.

16. Ms. Thompson displayed particular contempt towards African American employees specifically, and towards diversity issues in general.

17. Plaintiff Burton witnessed Ms. Thompson target and terminate employees for false, even discriminatory reasons on multiple occasions.

18. In or around June of 2019, Ms. Thompson abruptly terminated another well-performing African American employee named Dana Chambliss.

19. Ms. Chambliss was an Immigration Specialist, which was a key human resources position and much needed in the department at the time.

20. Ms. Thompson's justification for this termination was that she was simply "eliminating the position."

21. The work performed by this individual was then spread among the remaining departmental employees.

22. Ms. Thompson treated Plaintiff Burton differently from Caucasian employees and held her to higher, unreasonable standards. Ms.Thompson began demanding updates on Plaintiff's Q2 goals (even though such status updates were unreasonably premature).

23. Ms. Thompson then unilaterally demanded that these Q2 goals be completed by the end of the week, rather than by the end of the Quarter.

24. Such demands were not made of any of the Caucasian employees in the department.

25. On June 2nd, 2020, Plaintiff Alisha Burton was interviewed by Defendant ADTRAN's legal team, as she had been named as a witness in the Equal Employment Opportunities Commission ("EEOC") Charge of a former ADTRAN employee named Kaley Schweikart, who had previously filed a Charge of Discrimination asserting her rights had been violated under the Americans with Disabilities Act.

26. Ms. Schweikart had also been terminated by Joia Thompson in a discriminatory and illegal fashion.

27. Joia Thompson confronted Plaintiff Alisha Burton about this interview and intimated that Plaintiff was supporting Ms. Schweikart's narrative of events.

28. Joia Thompson subsequently told Plaintiff Alisha Burton that she would need to think about Plaintiff's future career development at Defendant ADTRAN.

29. Joia Thompson began targeting Ms. Burton for termination.

30. Joia Thompson's criticisms and unreasonable demands on Plaintiff increased in the following days.

31. On June 9th, 2020, Plaintiff Alisha Burton was summoned by Joia Thompson to discuss an "issue" that she stated she had witnessed during a meeting the day before.

32. During the meeting in question, Plaintiff had been forced to step out for a brief moment to take a phone call about an emergency family medical matter and had also needed to send a couple of follow-up texts upon her return to the meeting room.

33. Ms. Thompson confronted Plaintiff about her cell phone use and also criticized one of Plaintiff's African American reports, Sylvia Smith, for doing the same thing.

34. Plaintiff explained her situation, to no avail.

35. Plaintiff also pointed out that a number of Caucasian employees had been doing the same thing, but Ms. Thompson ignored this.

36. Shortly thereafter, Plaintiff Alisha Burton brought to Joia Thompson's attention that one of her direct reports had disclosed that two Caucasian Engineering Managers had spoken out against diversity and diverse candidates in staffing meeting.

37. Ms. Thompson would not address the complaint.

38. On June 10th, 2020, tired of Ms. Thompson's increasingly discriminatory behavior, Plaintiff Alisha Burton filed a complaint with the EEOC.

39. On June 12th, 2020, Ms. Thompson summoned Plaintiff to a meeting and told her she was being terminated due to financial constraints.

40. Plaintiff Alisha Burton knew that this was untrue as she had recently participated in a departmental management meeting where talent budgeting had been reviewed, along with potential cuts to staffing levels. Plaintiff's position was not discussed at this meeting.

41. However, at this same meeting the potential redundancy of one of Joia Thompson's direct reports, a Caucasian woman named Becky Hacker, was also discussed.

42. Joia Thompson stated she did not want to fire this Caucasian woman *"for cultural reasons"* but refused to elaborate on this statement.

43. The same day, Plaintiff was walked out of Defendant's offices by security, an indignity not inflicted upon any Caucasian employees who had been terminated from the same department.

44. Plaintiff was discriminated against in violation of Title VII of the Civil Rights Act (1964) and retaliated against for her participation in the investigation of the Charge of discrimination filed by a co-worker.

## CAUSES OF ACTION

### COUNT I
### RACE DISCRIMINATION UNDER
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

45. Plaintiff realleges and incorporates by reference, paragraphs 1 through 44, as if fully stated herein.

46. Defendant ADTRAN engaged in a discriminatory practice or discriminatory practices against Plaintiff based on her race, color and/or her complaints made with respect to the disparate treatment to which she was subject as a result of her race, with malice or reckless indifference to the Plaintiff's rights under TITLE VII of the CIVIL RIGHTS ACT OF 1964, as amended.

47. The actions of Defendant ADTRAN violated TITLE VII of the CIVIL RIGHTS ACT OF 1964, as amended.

### COUNT II
### RETALIATION under
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

48. Plaintiff realleges and incorporates by reference, paragraphs 1 through 44, as if fully stated herein.

49. Defendant ADTRAN also retaliated against Plaintiff by terminating her in response to Plaintiff opposing employment practices that the Plaintiff reasonably believed to be unlawful, in violation of Title VII.

50. Defendant ADTRAN subjected Plaintiff to unequal treatment regarding the terms, conditions and privileges of her employment for complaining of race-based discrimination. The retaliation was done willfully and with malicious and reckless disregard for the rights of Plaintiff.

51. As a proximate result of the Defendant ADTRAN's wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered extreme mental and emotional distress, pain and suffering, lost wages and benefits.

### COUNT III
### RETALIATION UNDER
### THE AMERICANS WITH DISABILITIES ACT

52. Plaintiff realleges and incorporates by reference, paragraphs 1 through 44, as if fully stated herein.

53. Defendant ADTRAN retaliated against Plaintiff by terminating her as a result of her participation as a witness in an EEOC investigation being carried out into discriminatory practices in violation of the Americans with Disabilities Act in Defendant's Human Resources Department.

54. As a proximate result of the Defendant ADTRAN's wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered extreme mental and emotional distress, pain and suffering, lost wages and benefits.

## PRAYER FOR RELIEF UNDER TITLE VII

The Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, pain, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as a direct result of the Defendant's violation of TITLE VII of the CIVIL RIGHTS ACT OF 1964, as amended, and the anti-retaliation provision of the AMERICANS WITH DISABILITIES ACT, as amended.

The Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of the Defendant's violation of the AMERICANS WITH DISABILITIES ACT of 1990, 42 U.S.C. §§ 12101-12213, as amended, and TITLE VII of the CIVIL RIGHTS ACT OF 1964, as amended.

WHEREFORE, the Plaintiff prays that this Court:

a. Declare the conduct engaged in by the Defendant ADTRAN to be in violation of the Plaintiff's rights;

b. Enjoin the Defendant ADTRAN from engaging in such conduct in the future;

c. Award the Plaintiff compensatory and punitive damages, including back pay, in an amount to be determined by this Court;

d. Award the Plaintiff costs, interest and attorneys' fees; and

e. Grant such further and other, different and relief, including equitable, as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable at law.

Dated this, the 24th day of August, 2021.

/s/ Teri Ryder Mastando
Teri Ryder Mastando (ASB-4507-E53T)
Eric J. Artrip (ASB-9673-I68E)
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, Alabama 35801
Phone:    (256) 532-2222
Fax:      (256) 513-7489
teri@mastandoartrip.com

*Attorney for Plaintiff, Alisha Burton*

**DEFENDANT TO BE SERVED AT THE FOLLOWING ADDRESS:**

ADTRAN, Inc.
(c/o Mark C. Smith, Registered Agent)
901 Explorer Boulevard,
Huntsville, AL 35806.